# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| GEORGE MOORE, on behalf of himself and others similarly situated, | Case No. 1:19-cv-4752 |
| Plaintiff, | |
| v. | **Jury Trial Demanded** |
| SECURITY SYSTEMS INC. D/B/A SAFE HOME SECURITY, and SAFEGUARD SECURITY AND SURVEILLANCE INC., | |
| Defendants. | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff George Moore ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Safeguard Security and Surveillance Inc. ("Safeguard") made repeated, nonconsensual autodialed and prerecorded-voice telemarketing calls to the residential telephone numbers of Plaintiff and others to promote Security Systems Inc. d/b/a Safe Home Security ("Safe Home Security") services in violation of the TCPA. The calls were also made to some individuals despite their phone number's presence on the National Do Not Call Registry, such as Plaintiff.

3. Plaintiff never consented to receive the calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*,

Plaintiff brings this action on behalf of proposed nationwide classes of other persons who received illegal telemarketing calls from or on behalf of Defendants. Plaintiff seeks injunctive and monetary relief for all similarly-situated persons injured by Safeguard's conduct.

4. A class action is the best means of obtaining redress for Defendants' wide-scale illegal telemarketing, and it is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff George Moore is a resident of Illinois in this district.

6. Defendant Security Systems Inc. d/b/a Safe Home Security is a Connecticut corporation with its principal place of business at 1125 Middle Street in Middletown, Connecticut 06457. Security Systems Inc. provides home alarm system monitoring services in this district, as it attempted to do with the Plaintiff, and is registered with the state of Illinois.

7. Defendant Safeguard Security and Surveillance Inc. is a Connecticut corporation with its principal place of business at 1 Corporate Drive in Windsor Locks, Connecticut 06096 with a registered agent of Mark Theriaque at the same address. Defendant Safeguard places telemarketing calls into this district, as it did with the Plaintiff.

## Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims, *Mims*, 132 S. Ct. 740, as well as supplemental jurisdiction over the Illinois Automatic Telephone Dialers Act claims pursuant to 28 U.S.C. § 1367(a), as such claims are so closely related as to form part of the same case or controversy—namely, Defendants' wrongful telemarketing through the use of automatic dialing equipment and a prerecorded voice to Plaintiff and others without consent.

9. The Court has personal jurisdiction over Defendants, and venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff Moore is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this putative class action lawsuit. Defendants' services that were promoted on those calls were also provided in this district, and a substantial portion of the events giving rise to this cause of action occurred in this district.

**TCPA Background**

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA and the National Do Not Call Registry</u>

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

<u>The TCPA Prohibits Pre-Recorded Telemarketing Calls</u>

13. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] … is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

14. The TCPA contains a private right of action for the sending of these calls and provides that a recipient can sue the violator and seek statutory damages as well as injunctive relief. 47 U.S.C. § 227(b)(3).

15. In 2013, the Federal Communication Commission ("FCC") required prior express written consent for all robocalls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>Illinois Automatic Telephone Dialers Act</u>

16. In Illinois, the Automatic Telephone Dialers Act ("ATDA") also prohibits, inter alia, "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/15(d). The ATDA provides for treble actual damages, statutory damages of $500 per violation, and costs and reasonable attorneys' fees. 815 ILCS 305/30.

4

17. Passage of the 2013 amendments to the ATDA providing for statutory damages, as invoked here, was unanimous in the Illinois legislature.

The Growing Problem of Automated Telemarketing

18. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

19. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/policy/advocacy/advocacy-filings/2016/06/ftc-staff-comment-federal-communications-commission-rules.

20. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc.

21. The news media has reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. *See, e.g.,* Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J.

(July 4, 2018), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203.

22. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

23. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited May 17, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

24. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited May 17, 2019).

**Factual Allegations**

25. Safeguard provides commercial and residential security products and services.

26. Safeguard uses telemarketing to promote its products and services.

27. Recipients of these calls, including Plaintiff, did not consent to receive them.

28. Safeguard's telemarketing efforts include the use of predictive dialers and prerecorded-voice calls.

29. The Defendants use this equipment because it allows for thousands of automated calls to be placed at one time, but their telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone for autodialed calls or who respond to the

prerecorded-voice call. Through this method, the Defendants shift the burden of wasted time to the consumers they call with unsolicited messages.

Calls to Mr. Moore

30. Plaintiff's telephone number in question, (630) XXX-1188, is a residential landline.

31. The number has been on the National Do Not Call Registry for more than ten years prior to the receipt of the calls at issue.

32. On February 22, 2019, March 5, 2019, and June 5, 2019, the Plaintiff received prerecorded telemarketing calls from Safeguard.

33. The pre-recorded message promoted security goods and services.

34. Mr. Moore attempted to ignore the calls.

35. However, Mr. Moore received another pre-recorded call on June 13, 2019.

36. The pre-recorded message promoted security goods and services, just like the other calls.

37. Mr. Moore responded to the prerecorded message.

38. Mr. Moore was eventually connected with "Frank Erickson," who stated his company was "Safeguard Surveillance & Security."

39. Mr. Erickson also said that his company was located at 1 Corporate Drive in Windsor Locks, Connecticut.

40. To verify the source of the calls, the Plaintiff set an appointment with the caller.

41. An individual came to the Plaintiff's house with a contract for Security Systems Inc.

42. That contract is attached as Exhibit 1.

43. Plaintiff and all members of the classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were subjected to annoying and harassing calls that constitute a nuisance. The calls also occupied Plaintiff's telephone line from legitimate communication.

44. Plaintiff and the other class members have not provided Defendants with their prior express written consent to place telemarketing calls to their phone numbers.

### Safe Home Security's Liability for Safeguard's Conduct

45. The FCC promulgates rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

46. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

47. In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

48. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Safe Home Security may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the

8

telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules,* 28 FCC Rcd. 6574, 6588, ¶ 37 (2013) ("May 2013 FCC Ruling").

49. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd. at 6592, ¶ 46.

50. Defendant Safe Home Security is vicariously liable for the calls placed by Defendant Safeguard to sell Safe Home Security's services.

51. Safe Home Security's vendors, including Safeguard, are obligated by contract to market Safe Home Security's products and services using Safe Home Security's trademarks and trade name.

52. Safe Home Security knowingly accepted business that Defendant Safeguard obtained through illegal telemarketing calls.

53. Safe Home Security had previously received complaints for Safeguard's illegal telemarketing practices.

54. Safeguard can bind Safe Home Security in contract, like it attempted to do with the Plaintiff, a hallmark of agency.

55. Safe Home Security maintained interim control over Safeguard's actions with respect to the calls.

56. Safe Home Security had control over whether and under what circumstances it would accept a customer generated through Safeguard's efforts.

57. Safe Home Security had the ability to prohibit Safeguard from using prerecorded voice calls to contact potential customers, and to require certain measures that would effectively prevent Safeguard from making illegal calls.

**Class Action Allegations**

58. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of the following classes of persons or entities similarly situated throughout the United States.

59. The classes of persons Plaintiff proposes to represent are tentatively defined as:

DO NOT CALL LIST CLASS

All persons within the United States to whom: (a) Defendants or a third party acting on their behalf made at least two telephone solicitation calls during a 12-month period; (b) to a residential telephone number.

PRE-RECORDED TCPA CLASS

All persons within the United States to whom: (a) Defendants or a third party acting on their behalf made one or more non-emergency telephone calls; (b) to a residential telephone number; (c) using a prerecorded voice.

### IL ATDA SUBCLASS

All Illinois residents to whom: (a) Defendants or a third party acting on their behalf made one or more non-emergency telephone calls; (b) to a residential telephone number; (c) using a prerecorded voice.

60. Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

61. The classes as defined above are identifiable through phone records and phone number databases.

62. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

63. Plaintiff is a member of each of the classes.

64. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    (a) whether Defendants utilized a pre-recorded voice to make their calls to members of the Pre-Recorded TCPA Class or IL ATDA Subclass, respectively;

    (b) whether Defendants systematically made multiple telephone calls to Plaintiff and members of the Do Not Call List Class;

    (c) whether Defendants made calls to Plaintiff and members of the classes without first obtaining the requisite consent or permission to make the calls;

    (d) whether Defendants' conduct constitutes a violation of the TCPA and/or ATDA; and

    (e) whether members of the classes are entitled to treble damages based on the willfulness of Defendants' conduct.

65. Plaintiff's claims are typical of the claims of class members.

66. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

67. The actions of the Defendants are generally applicable to the classes as a whole and to Plaintiff.

68. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

69. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

70. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violations of the TCPA's Do Not Call Provisions
### (on behalf of Plaintiff and the Do Not Call List Class)

71. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

72. Defendants violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by initiating multiple solicitation calls within a 12-month period to residential telephone numbers

despite their registration on the National Do Not Call Registry, without signed, written prior express invitation or permission.

73. The Defendants' violations were negligent and/or willful or knowing.

74. Plaintiff and Do Not Call List Class members are entitled to an award of up to $500 in statutory damages per violation (or up to $1,500 in damages where the Court finds such violation to have been willfully or knowingly committed), pursuant to 47 U.S.C. § 227(c)(5), as well as injunctive relief.

**Count Two:**
**Violation of the TCPA's Pre-Recorded Telemarketing Call Provisions**
**(on behalf of Plaintiff and the Pre-Recorded TCPA Class)**

75. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

76. The Defendants violated the TCPA by (a) initiating telephone solicitations to the Plaintiff's and other class members' residential telephone lines using a prerecorded message, or (b) by the fact that others made those calls on their behalf.

77. The Defendants' violations were negligent and/or willful or knowing.

78. Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making pre-recorded calls, except for emergency purposes, to any residential telephone number in the future.

**Count Three:**
**Violations of the ATDA, 815 ILCS 305/1 *et seq.***
**(on behalf of Plaintiff and the IL ATDA Subclass)**

79. Plaintiff realleges and incorporates the foregoing allegations as if set forth fully herein.

80. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

81. Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a). A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c).[1]

82. The Defendants did not have the consent of Plaintiff or the other members of the IL ATDA Subclass to play a prerecorded message placed by an autodialer.

83. Nonetheless, the Defendants called the phones of Plaintiff and the other members of the IL ATDA Subclass using a telephone dialing or accessing device, machine, computer, or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message. No human being physically dialed each digit of Plaintiff's or the other IL ATDA Subclass members' phone numbers to connect their telephones with a recorded message.

84. Consequently, Defendants violated the ATDA by playing a prerecorded message placed by an autodialer during calls to the phones of Plaintiff and the other IL ATDA Subclass members, without such persons' consent.

85. As a result of Defendants' conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the IL ATDA Subclass were harmed and are each

---

[1] The term "autodialer" or "autodialer system" does not include "device[s] associated with a burglar alarm system, voice message system or fire alarm system." 815 ILCS 305/5(a).

14

entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

    A.    Certification of the proposed classes;

    B.    Appointment of Plaintiff as representative of the classes;

    C.    Appointment of the undersigned counsel as counsel for the classes;

    D.    A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA and the Illinois ATDA;

    E.    An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from using prerecorded messages;

    F.    An award to Plaintiff and the classes of damages, as allowed by law;

    G.    Attorneys' fees, costs, and expenses, as permitted by law;

    H.    Leave to amend this Complaint to conform to the evidence presented at trial; and

    I.    Such other and further relief as the Court deems necessary, just, and proper.

## Jury Demand

Plaintiff requests a jury trial as to all claims of the complaint so triable.

PLAINTIFF,
By his attorneys

**/s/ Brian K. Murphy**
Brian K. Murphy (6225697)
Jonathan P. Misny
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com

Lauren E. Urban (6293832)
2425 N. Spaulding Ave., Floor 2
Chicago, IL 60647
(419) 344-1146
lauren.elizabeth.urban@gmail.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com